## UNITED STATES DISTRICT COURT
## DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| **ROMANTIX-FARGO, INC.**, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 3:22-cv-183-PDW-ARS |
| | ) | |
| **CITY OF FARGO, NORTH DAKOTA**, and **NICOLE CRUTCHFIELD**, in her official capacity as the Director of Planning & Development, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS AND RESPONSE OPPOSING MOTION FOR PRELIMINARY INJUNCTION

# Contents

Preliminary Statement ................................................................................. 1

Statement of Facts ...................................................................................... 2

    Relevant Fargo Code Provisions .......................................................... 2

    Romantix's Business in Fargo .............................................................. 4

    Zoning Administrator's Determination and Romantix's Appeal ........ 6

Standard of Review ..................................................................................... 8

    Motion to Dismiss ................................................................................ 8

    Preliminary Injunction ........................................................................ 9

Argument ................................................................................................... 10

I.    The complaint should be dismissed because sexual devices are not speech, contrary to Romantix's assumption in each of its claims. (Counts I-IV). .......... 10

    A.    Romantix's First Amendment claim (Count IV) should be dismissed because selling sex toys is not speech. ...................... 10

    B.    Romantix's vagueness claim (Count I) ignores the Director's authority to make a "similar use" determination, and in any event, fails under governing law. .............................................. 15

    C.    Romantix's prior restraint claim (Count II) fails because the generally-applicable change of use permit requirement has no nexus to speech. ....... 22

    D.    Romantix received procedural due process, and its contrary claim (Count III) should be dismissed. .............................. 25

II.    The Court should decline to exercise jurisdiction over Romantix's state law claim (Count V) ............................................... 28

III.  Romantix is not entitled to a preliminary injunction. ....................... 29

Conclusion ................................................................................................. 30

Certificate of Service ................................................................................ 31

## PRELIMINARY STATEMENT

This case concerns sexual devices, not speech. *Adam & Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951, 957 (8th Cir. 2019) (identifying "no authority that selling sexually-oriented devices is speech"). Yet every count of Romantix's complaint—except the state-law claim seeking review of the zoning decision below—presumes that free speech is at play. Under governing Eighth Circuit authority, it is not. This Court should therefore dismiss Romantix's federal claims and decline to exercise supplemental jurisdiction over its state-law claim.

Even if the Court does not dismiss the complaint, it should deny Romantix's motion for preliminary injunction. *ILQ Inves., Inc. v. City of Rochester*, 25 F.3d 1413, 1419 (8th Cir. 1994) (reversing preliminary injunction—in First Amendment case—after rejecting adult store's free speech and vagueness claims, holding that "[t]he public interest is not served by premature federal court intervention in regulatory matters of strong local interest").

Romantix's quest here is flawed for another, unique reason: it would *decrease* the amount of (presumptively) protected sexual expression sold in Fargo. Romantix now has two stores selling sexually explicit magazines and DVDs (adult media) in the City. It seeks to close one of those stores in order to open a new store in the heart of downtown—but it has *disavowed* the sale of adult media at the new store. (Doc. 1 at 13, ¶ 64 (emphasizing that store would offer "no magazines, no DVDs, no services of any kind").) Thus, Romantix seeks an injunction that would change, not maintain, the status quo to replace a store selling speech with one that does not.

For the reasons stated herein, this Court should dismiss this action.

# STATEMENT OF FACTS

**Relevant Fargo Code Provisions**

In Fargo Municipal Code ("FMC") §21-0101, the City adopted the 2021 edition of the International Building Code ("IBC"). (Ex. 1, Certified Records at 2.) IBC § 105.1 requires an owner or the owner's agent to apply for a permit if they intend to change the occupancy of a building or structure. (*Id.* at 3.) A change of use permit application must provide specified information, IBC § 105.3, and the City must review the application within a reasonable time and either reject the application in writing or issue a permit as soon as practicable. IBC § 105.3.1. (*Id.* at 4.)

Fargo Municipal Code Chapter 20 contains the City's Land Development Code ("LDC"). (Doc. 1-3.) The LDC "is intended to implement Fargo's Comprehensive Plan and related policies in a manner that protects the health, safety, and general welfare of the citizens of Fargo." (*Id.* at 1, §20-0104.)

LDC provisions are to be interpreted as the minimum requirements necessary to advance those stated purposes (*id.*, §20-0105), and if there are inconsistent or conflicting provisions then the more restrictive provision will control. (*Id.*, §20-0106.)

LDC §20-1201(A) states that "[a]ll provisions, terms, phrases and expressions contained in the Land Development Code shall be construed according to the LDC's stated purpose and intent." (*Id.* at 74.)

The LDC Table of Uses specifies that Adult Entertainment Centers are permitted by right in the GC (General Commercial), LI (Limited Industrial), and GI (General Industrial) zoning districts, but disallowed in other districts. (Doc. 1-3 at

2

14, §20-0401(B); *id.* at 16, Table 20-0401.) LDC §20-0402(A) requires Adult Entertainment Centers to be at least 1,250 feet away from sensitive land uses (e.g., religious institutions, schools, parks, and residential zones). (Doc. 1-3 at 19.) There are hundreds of sites in Fargo that satisfy the zoning district and buffer distance rules for Adult Entertainment Centers. Several such establishments—including two Romantix-operated stores—have operated in Fargo for many years.

Adult Entertainment Centers are prohibited, outright, in the DMU (Downtown Mixed-Use) zoning district. (Doc. 1-3 at 14, 16, Table 20-0401.) The DMU district serves to preserve and enhance downtown Fargo's role as a commercial, cultural, governmental, and residential center. (*Id.* at 6, §20-0212(A).)

"In 2002, the city launched a master redevelopment plan with projects spanning 15 years, including massive tax incentives to reinvest in downtown Fargo and totally restore Broadway (the main downtown street)." Danielle Braff, *Geez, Even Fargo Has Gone Upscale*, N.Y. Times, Oct. 24, 2022, www.nytimes.com/2022/10/24/travel/fargo-upscales.html (last visited Dec. 2, 2022). "After decades of decline, Downtown Fargo has emerged as a unique destination thanks to deliberate and forward-thinking investment . . . and a do-it-yourself culture embraced by community members." (Ex. 1, Certified Records at 14.) The result of these planning efforts and investments is that Downtown Fargo "is fundamentally different than the rest of the region." (*Id.*)

The LDC acknowledges that new or unlisted land uses—i.e., uses that do not fit precisely within preexisting definitions—can occur. (Doc. 1-3 at 14.) So §20-0401(F)

3

provides that when an applicant proposes such a land use, the Zoning Administrator can make a "similar use" interpretation—using criteria in §20-1203(B)—to determine where the use may locate. (Doc. 1-3 at 14.) The criteria include, *inter alia*, the characteristics of the activity in relation to stated characteristics of listed uses, the relative amount of sales from each planned activity at the site, the customer type for each activity, the building and site arrangement, and how the use advertises itself. (*Id.* at 77, §20-1203(B).) Even if the Zoning Administrator cannot make a similar use interpretation, the proposed unlisted use may be authorized as a use permitted by right in the GI district. (*Id.* at 14, §20-0401(F).)

**Romantix's Business in Fargo**

For many years, a Romantix store has operated in Fargo at 417 Northern Pacific Avenue "as an Adult Bookstore and Adult Cinema." (Doc. 1, Complaint ¶ 64.) Romantix's parent company—Progressive Retail Management, Inc. (*id.* ¶ 38)—also operates a Sam & Delilah store that sells sexually explicit books, magazines, and videos on 38th Street North in Fargo. (*Id.* ¶¶ 40-43; *see also* Doc. 1-12 at 6.) Both of those stores are Adult Entertainment Centers.

On August 15, 2022, the owner of the building at 74 Broadway North applied for a Change of Use Permit with the description "Change the existing space t[o] be used as retail," proposing that a Romantix store open at the site. (Ex. 1, Certified Records at 8.) The building is in the heart of the DMU (at the intersection of Broadway and 1st Avenue) (*id.* at 8, 13), a few blocks from the Romantix store on Northern Pacific.

The proposed store "does not intend to maintain or offer for sale upon the property any books, magazines, or periodicals." (Doc. 1, Complaint ¶ 34.) An executive for Romantix told planning staff that the store would use about 600 square feet (not including storage and cash register areas) to display and sell sexual wellness (adult novelty) products, but that it would "have no adult DVDs, Arcades, or Theaters." (Doc. 1-9.)

Romantix's representative said that the store would have about $17,686 worth of "Adult Novelty" items, consisting of devices and products with adult oriented packaging. (Doc. 1-12 at 3.) Adult novelties would account for 29% of the store's proposed $60,867 inventory, making it the highest value category of inventory in the store. (*Id.*) Romantix distinguished adult novelties from other novelty items, which would count for only $7,177 of inventory. (*Id.*)

Romantix provided photographs from other Romantix stores, which show a large quantity and wide variety of adult novelties covering walls, gondolas, display racks, and other shelves in the stores. (Doc. 1-12 at 7-31.) The adult novelties at Romantix include dildos, vibrators, penis pumps, anatomically-correct artificial penises, male masturbators, butt plugs, anal beads, sex dolls with artificial vaginas and anuses designed for sexual penetration, and various devices (restraints, whips, paddles, etc.) for bondage and BDSM-related sexual activities. (Doc. 1-12 at 7, 12-17, 20, 22-25, 27-28; Doc. 1, Complaint ¶ 76.)

Romantix reiterated that the store would have "No DVDs, No Magazines, No Media, No Viewing Areas, No Theaters of any kind." (Doc. 1, Complaint ¶ 73.)

**Zoning Administrator's Determination and Romantix's Appeal**

By letter dated September 7, 2022, the Planning Director denied the change of use permit for a Romantix store at 74 Broadway North because the proposed use does not meet the DMU zoning regulations. (Doc. 1-14.) The letter explained that Romantix's "product and sales information, store layout, admission limited to persons 18 years of age and older," and other information shows that the proposed adult novelty store is similar to an Adult Bookstore use and thus precluded in the DMU zone. (*Id.*)

Romantix appealed the denial to the board of adjustment. (Doc. 1-15.) Romantix's appeal stated that it would keep open its store at 417 Northern Pacific Avenue until it could open a new store. (*Id.* at 7.) It also emphasized that the Romantix store proposed for 74 Broadway would not carry sexually explicit books, magazines, or periodicals. (*Id.* at 7, 9.)

The board of adjustment heard Romantix's appeal on September 27, 2022. Planning and Development staff spoke about the DMU zone and the uses allowed in that zone. (Doc. 3, Ex. N, Video Recording of Board of Adjustment Proceedings at 24:38-26:30.) Staff then explained the department's review of Romantix's information according to the criteria for a "similar use" interpretation in §20-1203(B). (*Id.* at 26:50-28:24.) Considering Romantix's submitted floor layout, retail categories, proposed inventory and sales information, and adults-only admission policy, and the DMU zoning district standards, the Zoning Administrator concluded that the proposed store was adult-oriented, differed from regular retail uses, and was a use not allowed in the DMU district. (*Id.* at 26:25-29:31.)

6

During discussion of the appeal, staff noted that the purpose of a zoning ordinance is to implement the City's master plan and comprehensive plan, and that that purpose influences how staff conducts a "similar use" interpretation when evaluating an unlisted use, under §20-0401(F) and §20-1203(B). (*Id.* at 48:05-48:35.) A board member questioned the intent of the proposed store, referring to mixed signals in Romantix's application materials and appeal presentation. (*Id.* at 58:28-1:00:01.) Staff explained that the adult novelties proposed for Romantix's store led staff to conclude that Romantix was an adult-oriented use that is not allowed in the DMU zone. (*Id.* at 1:05:47-1:06:21.) After the discussion, the board of adjustment affirmed the denial. (*Id.* at 1:12:02-1:12:40.)

Romantix appealed to the city commission. (Doc. 1-17.) Romantix again stated it would continue operating its Northern Pacific store "until a new store is open to the public." (*Id.* at 6.) Romantix also reiterated that it was "specifically excluding books, magazines and other periodicals" from the proposed store. (*Id.* at 8.)

The city commission heard the appeal on October 17, 2022. The Planning and Development Department's presentation addressed the criteria for making a similar use interpretation to identify zoning standards for a new or unlisted land use. (Ex. 1, Certified Records at 16, 19.) Staff analyzed Romantix's proposed store information according to the similar use provisions in LDC §20-0401(F) and §20-1203(B). (*Id.* at 20.) Photographs from similar Romantix stores showed that the proposed store had projected characteristics of an Adult Use. (Ex. 1 at 20; LDC §20-1203(B)(1).) Romantix's projected inventory figures suggested that a third or more

7

of its sales would come from adult novelties. (Ex. 1 at 20-21; LDC §20-1203(B)(3).)

The proposed store's adults-only customer policy shed light on the type of customers Romantix would allow. (Ex. 1 at 20; LDC §20-1203(B)(4).) Romantix's floor plan showed the building would be arranged for approximately 20% of the customer-accessible floor space to display sexual wellness products (adult novelties). (Ex. 1 at 20-21; LDC §20-1203(B)(7).) And Romantix's online presence showed that the use advertises itself as an "adult entertainment store" and "America's Premier Adult Toy Retailer." (Ex. 1 at 20; LDC §20-1203(B)(10).)

Those factors showed that Romantix would be similar to an Adult Bookstore, which is prohibited in the DMU, and different from regular retail uses. (*Id.* at 22-23.) The city commission affirmed the denial of a permit for Romantix at 74 Broadway North because adult uses like Adult Bookstores are not allowed in the DMU. (Doc. 1, Complaint ¶ 91.)

## STANDARD OF REVIEW

**Motion to Dismiss**

To survive a motion to dismiss under Rule 12(b)(6), "the complaint must state sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim" under governing law. *DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1022 (8th Cir. 2022). It must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions" are insufficient; the plaintiff must assert facts to support "the reasonable inference that the defendant is liable for the misconduct alleged." *City Union Mission, Inc. v. Sharp*, 36 F.4th 810, 815 (8th Cir. 2022) (cleaned up). Under the Rule, a court may consider public

8

records without converting the motion into one for summary judgment. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

Finally, in the "usual case," where all federal claims are dismissed before trial, a court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). *Zubrod v. Hoch*, 907 F.3d 568, 581 (8th Cir. 2018). Its decision on this issue is reviewed only for abuse of discretion. *Id*. at 580.

**Preliminary Injunction**

"The primary function of a preliminary injunction is to preserve the status quo" until a final hearing where a court may grant full relief. *Kansas City Southern Trans. Co., Inc. v. Teamsters Local Union # 41*, 126 F.3d 1059, 1065 (8th Cir. 1997).

Courts weighing a preliminary injunction consider four factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).

"[U]nder any test the movant is required to show the threat of irreparable harm . . . Thus, the absence of a finding of irreparable injury is alone sufficient ground" to deny a preliminary injunction. *Id*. at 114 n.9. Economic loss does not usually amount to irreparable injury because it can be compensated by money damages. *Sampson v. Murray*, 415 U.S. 61, 90 (1974); *Watkins, Inc. v. Lewis*, 346 F.3d 841, 846 (8th Cir. 2003) (affirming denial of preliminary injunction for lack of irreparable harm where alleged loss was compensable in money damages).

## ARGUMENT

**I.   The complaint should be dismissed because sexual devices are not speech, contrary to Romantix's assumption in each of its claims. (Counts I-IV).**

Every federal count of the complaint relies upon the First Amendment. (*See, e.g.*, Doc. 1 at 20 ¶¶ 102, 104 (Count I claiming vagueness that "violates the First Amendment" and "chills speech"); *id*. at 102 ¶ 122 (Count II asserting prior restraint in "violation of the First and Fourteenth Amendments"); *id*. at 24 ¶ 135 (Count III claiming "standing to assert its customers' First Amendment interests" regarding change of use permit); *id*. at 26 ¶¶ 151-156 (Count IV alleging Land Development Code violates First Amendment strict and intermediate scrutiny).)

But Romantix has pled itself out of its First Amendment claims. Romantix repeatedly stresses that it "does not intend to maintain or offer for sale upon the property any books, magazines, or periodicals." (Doc. 1 at 8 ¶ 34.) It "will have no adult DVDs, Arcades, or Theaters," and will offer "no magazines, no DVDs, no services of any kind." (*Id*. at 13 ¶¶ 63-64.) On-point authority requires dismissal.

**A.   Romantix's First Amendment claim (Count IV) should be dismissed because selling sex toys is not speech.**

Romantix currently operates a Romantix store selling expressive adult media at 417 Northern Pacific Avenue, but proposes to close that store in order to open a replacement store that sells sexual devices, but no adult media. It has therefore "jettisoned any claim to expressive conduct" that would bring it within the First Amendment. *Adam and Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951, 957 (8th Cir. 2019) (cleaned up).

10

A "party desiring to engage in assertedly expressive conduct must demonstrate that the First Amendment even applies." *Id*. "[N]ot all conduct is protected speech simply because the person engaging in it intends thereby to express an idea." *Id*.

Rather, the Supreme Court has "extended First Amendment protection only to conduct that is *inherently* expressive." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006) (emphasis added).

The Supreme Court has rejected the idea that the sale of sexual devices is expressive conduct under the First Amendment. In *Sewell v. Georgia*, the Supreme Court dismissed "for want of a substantial federal question" an appeal challenging, under the First Amendment, Georgia's obscenity statute banning the commercial distribution of sexual devices. *Sewell v. Georgia*, 435 U.S. 982 (1978). Dismissals on this basis "reject the specific challenges presented in the statement of jurisdiction," *Mandel v. Bradley*, 432 U.S. 173, 176 (1977), and are binding "votes on the merits of a case." *Hicks v. Miranda*, 422 U.S. 332, 344 (1975). In *Sewell*, Justice Brennan dissented from the dismissal, but even he observed that "appellant fundamentally misapprehends the reach of the First Amendment in his argument that the protections of that Amendment extend to the sexual *devices* involved," including an artificial vagina and rubber devices shaped like penises. 435 U.S. at 985 (Brennan, J., dissenting) (emphasis in original); *cf. Heideman v. South Salt Lake City*, 348 F.3d 1182, 1195 (10th Cir. 2003) (upholding ordinance applying "to all 'sexually oriented businesses,' which include establishments such as 'adult motels' and 'adult novelty stores,' which are not engaged in expressive activity").

*Adam and Eve Jonesboro* is on all fours, and governs here. In that case, a chain advertising itself as the "#1 Adult Toy Superstore" sought to open an adult store that would sell only "lingerie, adult toys, costumes, novelties, games, massage oils, and personal lubricants." 933 F.3d at 955. The City "refused to issue a certificate of occupancy" and stated that a "permit could not issue" because the location did not comply with zoning laws, including a state statute. *Id*. at 956.

Adam and Eve sued, alleging that the statute violated the First Amendment "because it 'restrains the plaintiff's retail sale of merchandise, based on the content of the merchandise.'" *Id*. The store stated that it would not operate booths or have live entertainment, and that it "would not sell pornographic DVDs, books, and magazines." *Id*. The district court ruled that First Amendment intermediate scrutiny applied, and that the statute satisfied that scrutiny. The court also rejected a vagueness challenge and an equal protection challenge to the statute. *Id*.

In affirming, the Eighth Circuit took a different tack. "Although the district court never considered whether Adam and Eve engaged in expressive conduct," *id*. at 958, the appellate court held that "[a] court 'must first determine whether [the plaintiff's action] constituted expressive conduct.'" *Id*. at 957 (quoting *Texas v. Johnson*, 491 U.S. 397, 403 (1989)).

But "Adam and Eve fail[ed] to make such a showing," *id*., and its claim that "this is a restraint of speech based purely on content, they don't like what [Adam and Eve is] selling" was insufficient to do so. *Id*.

The store cited "no authority that selling sexually-oriented devices is speech."

*Id.* In stressing that it would not sell DVDs, books, or magazines, it "jettisoned any claim to expressive conduct." *Id.* "After disavowing any expressive conduct, we hold that Adam and Eve cannot state a claim under the First Amendment." *Id.* at 958.

Romantix is in the same boat as Adam and Eve, and must meet the same fate.[1]

Adam and Eve claimed that it is the "leading sex toy company in the USA." *Id.* at 955 (citing Adam and Eve website, accessed one week before opinion publication). Not to be outdone, Romantix claims that *it* is "America's Premier Adult Toy Retailer," having "the largest selection of Vibrators, Dildos, Sexy Lingerie, and Erotic Accessories." (Ex. 1, Certified Records at 20 (citing www.romantix.com).)

Just as Adam and Eve "conceded that more than 30% of its revenue derived from" sexual devices, *Adam and Eve Jonesboro*, 933 F.3d at 956, Romantix's own figures show that "adult novelties" is its most significant category of merchandise, accounting for 29% of the total dollar value of its inventory. (Doc. 1-12 at 3.)

Like Adam and Eve, Romantix's planned store would sell dildos, not discourse. So Romantix has likewise "jettisoned any claim to expressive conduct" by pleading that it will not have any arcades or theaters on site, and will offer "no magazines, no DVDs, no services of any kind." (Doc. 1 at 13, ¶ ¶ 63-64.)

Nor can Romantix avoid dismissal by asserting that it will sell non-adult "bachelorette novelties," "apparel," "balloons," and "board games and card games." (*Id.* at 8 ¶ 35.) Adam and Eve also planned to sell non-adult "novelties," apparel

---

[1] Romantix's legal position is actually worse, as it already has two Fargo stores selling adult media, which further undermines its constitutional claims.

such as "costumes" and "lingerie," and "games" alongside its "adult toys." *Adam and Eve Jonesboro*, 933 F.3d at 955. But the Eighth Circuit nevertheless ruled that Adam and Eve could not "state a claim under the First Amendment." *Id*. at 958. Nor is there any record evidence that the City's decision was based on non-adult items such as lingerie, games, or balloons.

Rather, it was Romantix's plan to sell adult novelties (sexual devices) that triggered application of the similar use criteria and led the City to treat Romantix the same as it would an adult bookstore use. (Ex. 1, Certified Records at 19, 20, 21 (showing "Adult Novelties" as the largest inventory category by dollar value, while reiterating that store will have "No DVDs, No Magazines, No Media, No Viewing Areas, No Theaters of any kind."); *see also* Doc. 1-16 at 1:05:47-1:06:21 (noting that Romantix's information used the descriptor "adult novelties" and distinguished between "novelties" and "adult novelties," the latter of which trigger regulation).)

Romantix fails to state a claim under the First Amendment, and this defect permeates every federal count of its complaint. This Court should therefore dismiss the complaint. *Adam and Eve Jonesboro*, 933 F.3d at 958; *cf. HH-Indianapolis LLC v. Consol. City of Indianapolis and Marion County*, 889 F.3d 432, 440 (7th Cir. 2018) ("Ultimately, the question of whether the City's determination [that plaintiff would qualify as an adult bookstore under zoning ordinance] rested on a sufficient evidentiary basis is properly suited for state court review. That evidentiary issue does not present a First Amendment violation, nor does it justify the issuance of a preliminary injunction.").

**B.  Romantix's vagueness claim (Count I) ignores the Director's authority to make a "similar use" determination, and in any event, fails under governing law.**

Romantix asks the wrong question, under the wrong standard, to arrive at the wrong answer. The right question is not whether Romantix's proposal fits precisely into the definition of "Adult Bookstore," but whether the Director properly exercised her authority under LDC § 20-0401(F) in making a similar use interpretation per the criteria in LDC § 20-1203(B)—a provision that Romantix wholly ignores.

The right standard for judging a vagueness claim that does not involve speech is whether "the law is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).

And the right answer under that standard is that Fargo's zoning ordinance is not unconstitutionally vague. The alleged vagueness is in a definition—not a prohibition—and even a different, prior application does not establish a void-for-vagueness due process violation. That Romantix's proposed adult novelty shop is a "similar use" to the adult bookstores that its parent company has operated in Fargo for years is not challenged. *Jake's, Ltd. v. City of Coates*, 284 F.3d 884, 889 (8th Cir. 2002) (rejecting claim that Minnesota statute authorizing amortization of "adults-only bookstores," "adults-only theaters," or "similar adults-only businesses" was unconstitutionally vague).

"Although there may be issues of interpretation regarding the meaning of a statute, that in itself does not give rise to a finding of unconstitutional vagueness." *Farkas v. Miller*, 151 F.3d 900, 906 (8th Cir. 1998). A law is unconstitutionally vague only if it "fails to provide a person of ordinary intelligence fair notice of what

15

is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *U.S. v. Williams*, 553 U.S. 285, 304 (2008) (citing *Hill v. Colorado*, 530 U.S. 703, 732 (2000) and *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972)).

"The Supreme Court has cautioned that perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Adam and Even Jonesboro*, 933 F.3d at 958 (cleaned up). Thus, even a law regulating expression may have "'flexibility and reasonable breadth'" so long as fair notice "'what the ordinance as a whole prohibits'" is given. Id. (quoting *Grayned*, 408 U.S. at 110).

Where protected speech is *not* involved, a "complainant must demonstrate that the law is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).

Moreover, the party asserting a vagueness claim must prove that the law is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971). Even if a law is vague, "[i]t has long been a tenet of First Amendment law that in determining a facial challenge to a statute, if it be 'readily susceptible' to a narrowing construction that would make it constitutional, it will be upheld.'" *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 397 (1988) (citations omitted).

Romantix fails to prove that the Land Development Code is unconstitutionally

void for vagueness under the due process clause.

As an initial matter, Romantix challenges not a prohibition, but a definition. The LDC does not prohibit Adult Bookstores; it requires only that such stores—and similar uses as determined by the Director pursuant to articulated criteria—be in a proper location. *Cf. Gammoh v. City of La Habra*, 395 F.3d 1114, 1120 (9th Cir. 2005) ("It is not illegal to be an adult cabaret dancer; only to be an adult cabaret dancer performing within two feet of a patron. This distinction introduces additional objectivity into the Ordinance because the act that is prohibited—being within two feet of a patron—is certainly not vague."). Here, the rule that Adult uses locate in a GC, LI, or GI district, and not in the DMU, is certainly not vague.

Romantix has never been cited under the LDC, or even been at risk of unwittingly violating that code. Thus, the "fair notice" concept that animates the due process vagueness doctrine, *see Williams*, 553 U.S. at 304, is not implicated. The change of use permit requirement provides a process for verifying zoning compliance. Within that process, a decision was rendered based on Romantix's submissions and the definitions and similar use interpretation criteria in the LDC. Romantix was able to challenge that determination through multiple appeals.

But in asking the wrong question—whether its proposed adult novelty store fits precisely within the words of the Adult Bookstore definition—Romantix wholly ignores the similar use determination made by the Director. (Ex. 1, Certified Records at 18-21.) However, by not challenging the similar use criteria or the Director's application of those criteria as vague or otherwise invalid, Romantix

cannot show that the LDC is unconstitutionally vague as applied to its store.

Romantix instead points to the zoning confirmation letter in another case, and reiterates its view that the Director was limited to consider only the words in the Adult Bookstore definition. Neither argument proves unconstitutional vagueness.

The letter argument sounds in estoppel, not vagueness. *But see Singha v. State Bd. of Med. Exam'rs*, 574 N.W.2d 838 (N.D. 1998) (holding that "[e]stoppel against an administrative agency is not freely applied"); Ex. 1, Certified Records at 4, IBC § 105.4 ("Permits presuming to give authority to violate or cancel the provisions of this code or other ordinances of the jurisdiction shall not be valid.").

Romantix argues that if the City: (1) gave a preliminary determination about another store, (2) in another zoning district, that *allows* Adult uses, (3) where the proposed new use admitted that it would be an Adult Bookstore, then the City cannot reach a seemingly different conclusion on a change of use permit application for an adult novelty store seeking to open in the DMU—which prohibits Adult uses.

But the letter about the 38th Street project is specific to that project, and emphasizes that it is "based on . . . the information supplied" by the applicant. (Doc. 1-6 at 1.) There is no indication that the applicants (Romantix and it preexisting sister store, Sam & Delilah's) supplied pictures of Sam & Delilah's showing sexual devices on display—like Romantix did in this case. Indeed, the City's letter states that "Conformance with Current Zoning Requirements" must be verified, as "[t]here is no site plan on file for the current property" and "an on-site review would be needed." (*Id.*) If the City had conducted an on-site inspection, it may well have

observed sexual devices that would have triggered questions about whether that store would be a similar use to an adult bookstore, even without adult media. But Romantix abandoned the project.

The 38th Street project was also different since Adult uses are allowed "*by right* in the LI, Limited Industrial" district where 38th Street is situated. (*Id*.) Thus, it is possible that review was not as rigorous as it should have been at that early stage. At the board of adjustment hearing, the Director acknowledged that while a mistake could have been made in the prior LI district case, that would not govern the current case involving the DMU, which prohibits Adult uses. (Doc. 3, Ex. N at 1:09:32-1:09:50.) Indeed, because a similar use determination was never made it the prior case, it could not govern such a determination made in this case about Romantix's proposed adult novelty store for the DMU.

That the City gave Romantix a preliminary (and favorable) determination about its desire open a new store in the LI district does *not* mean that the City's different determination here, under criteria not invoked before, renders the LDC unconstitutionally vague. *Farkas*, 151 F.3d at 906 ("Although there may be issues of interpretation regarding the meaning of a statute, that in itself does not give rise to a finding of unconstitutional vagueness.")

Turning to the LDC's definition of Adult Bookstore itself, Romantix's claim falters. The definition is not unconstitutionally vague because its terms give people of ordinary intelligence a reasonable opportunity to understand its meaning.

> **Adult Bookstore:** An enclosed building having as a substantial or
> significant portion of its stock in trade, books, magazines, or other

periodicals that are distinguished or characterized by their emphasis on matter depicting or describing specified sexual activities or specified anatomical areas.

(Doc. 1-3 at 74.)

The Eighth Circuit has rejected vagueness challenges to "substantial or significant portion" and "distinguished or characterized by their emphasis" in the "adult bookstore" context. *ILQ Investments, Inc. v. City of Rochester,* 25 F.3d 1413, 1419 (8th Cir. 1994). *ILQ* upheld a zoning restriction applied to a "new type of adult business," *id.* at 1418, that "segregates forty per cent of its floor space into an adults-only area" selling adult media "and novelty items that account for fifty per cent of the store's total sales." *Id.* at 1415; *see also Adam and Eve Jonesboro*, 933 F.3d at 956 (rejecting vagueness challenge to "principal business purpose" in "adult bookstore" definition where "one-third of the gross revenue" of the store derived from sexual devices).

Although "[l]egislatures are not required to define every term in a statute," *id.* at 958, the LDC defines "specified sexual activities" and "specified anatomical areas" in the same way that they have been defined in cases going back decades. *Compare* Doc. 1-3 at 76 *to Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 53 n.4 (1976). Romantix develops no argument that those terms are vague.

Nor does the term "stock in trade" render the Adult Bookstore impermissibly vague in all of its applications. As a member of the board of adjustment recognized, that term is defined as "the typical subject or commodity a person, company or profession uses or deals in, or the goods kept on hand by a business for the purpose of its trade." (Doc. 3, Ex. N at 50:12-50:39.)

20

Romantix seizes on the fact that board of adjustment members had questions about the definition in relation to Romantix's change of use application. But while the staff pointed the board to the Director's authority to make a similar use interpretation standards in LDC § 20-1203(B) (Doc. 3, Ex. N at 27:01-28:05), the board focused on the terms in the Adult Bookstore definition. That shows only that they, as nonlawyers, sought to consider the facts and the law together "for the purpose of achieving a reasoned and reasonable interpretation." *Gowan v. Ward County*, 764 N.W.2d 425, 427 (N.D. 2009). "Close cases can be imagined under virtually any statute. The problem that poses is addressed, not by the doctrine of vagueness, but [in a criminal case] by the requirement of proof beyond a reasonable doubt." *United States v. Williams*, 553 U.S. 285, 305-06 (2008).

But the fundamental problem with Romantix's argument is that the Director was not limited to only the precise terms of the Adult Bookstore definition. If Romantix were correct that its adult novelty shop would not fit within the four corners of that definition, that would only mean that it is a "New or Unlisted Use" under LDC § 20-0401(F), and that the Director is authorized to make the similar use interpretation to find the closest use separately defined in the LDC. That is what the Director did, and Romantix makes no challenge to either the similar use criteria or the Director's application of them.

Finally, under *Boyce Motor Lines*, 342 U.S. 337, even if some part of the LDC were considered vague, it would not make the code unconstitutional because punishment can happen only for violations committed knowingly. LDC §20-1104(A)

21

requires the City to notify a party concerning the nature of a violation and to allow at least 10 days to correct the violation. (Doc. 1-3 at 73.) If a party corrects an LDC violation after receiving notice, there would be no punishment for the violation. But if a party is made aware of the violation, yet then continues to violate the LDC, only then may the uncorrected violation be prosecuted as an infraction under Fargo Municipal Code §1-0305(B). Ordinance infractions are punishable by a fine not to exceed $1,000, but not imprisonment. FMC §1-0301(B). Thus, the only LDC violations that are punished as infractions are those committed knowingly.

For all these reasons, Romantix's claim fails as a matter of law.

## C. Romantix's prior restraint claim (Count II) fails because the generally-applicable change of use permit requirement has no nexus to speech.

Romantix fails to state a First Amendment prior restraint claim because, as explained above, its proposed store will not offer books, magazines, or DVDs that would trigger free speech protections. Romantix also fails to state a claim because the change of use permit is a generally-applicable building requirement that, on its face, has no nexus to expression or conduct commonly associated with expression.

The term prior restraint describes "'administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.'" *Alexander v. United States*, 509 U.S. 544, 550 (1993) (quoting M. Nimmer, *Nimmer on Freedom of Speech* § 4.03, p. 4-14 (1984) (emphasis in opinion).) Under the First Amendment prior restraint doctrine, a facial challenge may lie against "a licensing statute placing unbridled discretion in the hands of a government official or agency" because the statute can result in censorship. *City of*

*Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988). But in contrast,

> laws of general application that are not aimed at conduct commonly
> associated with expression and do not permit licensing determinations to
> be made on the basis of ongoing expression or the words about to be
> spoken, carry with them little danger of censorship. For example, a law
> requiring building permits is rarely effective as a means of censorship.
> …[S]uch laws provide too blunt a censorship instrument to warrant
> judicial intervention prior to an allegation of actual misuse.

*Id.* at 760-761.

"The law must have a close enough nexus to expression, or to conduct
commonly associated with expression, to pose a real and substantial threat of the
identified censorship risks." *Id.* at 759.

The change of use permit requirement is not a prior restraint on speech. It does
not forbid any communication, let alone "certain communications" in advance of
when they are to occur. *See Alexander*, 509 U.S at 550. Indeed, Romantix is
"speaking" through its commercial distribution of adult media at its multiple Fargo
locations right now.

On its face, the change of use permit requirement has no nexus to speech. It
applies any time that an owner seeks to change the occupancy of a building or
structure. (Ex. 1, Certified Records at 3 (IBC § 105.1, requiring that any owner "who
intends to . . . change the occupancy of a building or structure . . . shall first make
application" to the building official and obtain the required permit).) Thus, it is not
subject to challenge on prior restraint grounds. *City of Lakewood*, 486 U.S. at 759.

In this case, the building owner applied for a change of use permit to "Change
the existing space t[o] be used as retail." (Ex. 1, Certified Records at 8.) Any change
of occupancy or use at that location would have triggered the same requirement. (*Id.*

at 3, 6-7.) So a facial challenge under the First Amendment does not lie.

Romantix does not allege that the City is enforcing this generally-applicable requirement only against Romantix, to advance a censorial motive, while giving other businesses a pass when they change a building's occupancy. *City of Lakewood*, 486 U.S. at 761 (observing that building permit laws "provide too blunt a censorship instrument," and that if a charge of misuse is made, "the general application of the statute to areas unrelated to expression will provide the courts a yardstick with which to measure the licensor's occasional speech-related decision"). Nor could it, since Romantix has been freely engaging in commercial speech activity for years.

So Romantix must rely on inapposite cases, each of which involved discretionary permit applications that applied to adult uses, but not others. *See Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1361 (11th Cir. 1999) (adult businesses limited to zone in which special zoning exception procedures applied); *3570 East Foothill Blvd., Inc. v. City of Pasadena*, 912 F. Supp. 1268, 1274 (C.D. Cal. 1996) (adult businesses subject to conditional use permitting); *Amico v. New Castle Cnty.*, 571 F. Supp. 160, 171 (D. Del. 1983) (adult businesses required to obtain special permit premised on finding that neighborhood will not be detrimentally affected); *Bukaka, Inc. v. Cnty. of Benton*, 852 F. Supp. 807, 810 (D. Minn. 1993) (recreational facilities subject to conditional use permitting); *Univ. Books and Videos, Inc. v. Miami-Dade Cnty.* 132 F. Supp. 2d 1008, 1011 (S.D. Fla. 2001) (adult businesses subject to "special use" criteria); *Eliason v. City of Rapid City*, 306 F. Supp. 3d 1131, 1138 (D. S.D. 2018) (sexually oriented businesses

subject to conditional use permitting).

In contrast, Fargo permits Adult uses *by right*, subject to only objective spacing requirements, in three zones (GC, LI, HI). The City applied generally applicable requirements to Romantix that have no speech elements. Having pleaded itself out of the First Amendment, Romantix cannot sustain its prior restraint challenge.

## D. Romantix received procedural due process, and its contrary claim (Count III) should be dismissed.

Romantix's procedural due process claim is a non-starter. Sex toys are not speech, so there is no liberty interest at play. Nor is there a property interest, since the LDC distinguishes between Retail Sales and Services uses and Adult uses—the latter of which "are not allowed in the DMU." (Doc. 1-7 at 1; Ex. 1, Certified Records at 17 (showing relevant excerpts of Use Table).)

Romantix's claim thus collapses into its disagreement with planning staff's similar use determination to apply the standards for adult bookstores to Romantix. But since there was no mutual understanding that Romantix could operate its adults-only store in the DMU, there is no legitimate claim of entitlement to the change of use permit. In any event, Romantix received notice and two hearings, so its claim fails as a matter of law.

The *sine qua non* of a procedural due process claim is a "legitimate claim of entitlement" to the property interest that the plaintiff asserts. *Scott v. City of Sioux City, Iowa*, 736 F.2d 1207, 1217 (8th Cir. 1984). It is insufficient to show just "an abstract need or desire for" or "a unilateral expectation of" it. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Property interests are "not created by the

Constitution," *id.*, but by sources such as "state or local law" or "an express contract or mutual understanding with the defendants." *Scott*, 736 F.2d at 1217. Absent "a legitimate claim of entitlement," a procedural due process claim fails. *Id.*

If the claimant establishes a legitimate claim of entitlement to a benefit or other property interest, then the court will determine what procedural due process was due. Procedural due process is satisfied "when the landowner has notice of the proposed government action and an opportunity to be heard." *Pietsch v. Ward Cnty.,* 991 F.3d 907, 910 (8th Cir. 2021) ("Since [landowners] received individual notice and an opportunity to be heard on their variance applications, the County provided sufficient notice and opportunity for a hearing about their proposed uses."). "Due process claims involving local land use decisions must demonstrate the government action complained of is truly irrational, that is something *more than* arbitrary, capricious, or in violation of state law." *Id.* (emphasis added, citation omitted).

Romantix's claim fails. First, as discussed above, there is no authority showing that selling sexual devices is speech. *Adam and Eve Jonesboro*, 933 F.3d at 957. So there is no "legitimate claim of entitlement" based on the First Amendment. *Bd. of Regents*, 408 U.S. at 577.

Nor does Romantix show a legitimate claim of entitlement to operate its proposed store in the DMU. As the zoning staff's email explained to Romantix before it entered any lease, Retail Sales and Service uses are allowed in the DMU, but Adult uses are not, so only a business that does "not include any adult uses would be allowed in DMU." (Doc. 1-7 at 2.) So Romantix is not entitled to operate its

adult novelty store as a Retail Sales and Service use in the DMU based on any alleged "mutual understanding with the defendants." *Scott*, 736 F.2d at 1217.

Romantix's claim to such a right is just a recasting of its claim that the City erred in treating it as an Adult use under FMC § 20-0401(F) and the similar use criteria in FMC § 20-1203(B). But Romantix's disagreement with the City could create nothing more than a "unilateral expectation" of being able to proceed with its plan, which is far short of a "legitimate claim of entitlement" to the change of use permit authorizing that plan to proceed. *Bd. of Regents*, 408 U.S. at 577. Romantix's claim fails the first prong of the procedural due process test. *Scott*, 736 F.2d at 1217.

It also fails the second. Romantix received "notice of the proposed government action and an opportunity to be heard." *Pietsch*, 991 F.3d at 910. The Director issued Romantix a letter denying the change of use application. (Doc. 1 at 16 ¶ 80; Doc. 1-14.) Romantix appealed to the Fargo Board of Adjustment (Doc. 1 at 16 ¶ 82-84; Doc. 1-15), which heard Romantix's appeal on September 27, 2022. Romantix, through its attorney, presented eleven exhibits and argued its appeal. (Doc. 1 at 16 ¶ 83.) That hearing, by itself, satisfies procedural due process. *Pietsch*, 991 F.3d at 910. Romantix then received a second hearing before the City Commission on October 17. (Doc. 1 at 18 ¶ 91.) No more process was due.

Finally, Romantix pleads no facts to show that the government's decision was "truly irrational, that is something more than arbitrary, capricious, or in violation of state law." *Pietsch*, 991 F.3d at 910. On the contrary, the planning staff, based upon the additional information Romantix supplied to them, made a reasoned application

of the similar use criteria and determined that the adult bookstore use was most similar to Romantix's proposed store. (Ex. 1, Certified Records at 20.) And there is no record evidence that Fargo—which has had several adult uses for years (including two Romantix-operated stores—acted out of any animus in this case.

Romantix falls far short of pleading a viable procedural due process claim.

## II.   The Court should decline to exercise jurisdiction over Romantix's state law claim (Count V).

After dismissing Romantix's federal claims, the Court should decline to exercise supplemental jurisdiction over Romantix's state-law zoning appeal.

"A district court that has dismissed all claims over which it has original jurisdiction may decline to exercise supplemental jurisdiction." *Zubrod v. Hoch*, 907 F.3d 568, 580 (8th Cir. 2018); 28 U.S.C. § 1367(c)(3). "[W]hen a district court has dismissed every federal claim . . . judicial economy, convenience, fairness, and comity will usually point toward declining to exercise jurisdiction over remaining state-law claims." *McManemy v. Tierny*, 970 F.3d 1034, 1041 (8th Cir. 2020). This is also desirable to "avoid needless decisions of state law as a matter of comity." *American Civil Liberties Union v. City of Florissant*, 186 F.3d 1095, 1099 (8th Cir. 1999).

"[T]his is particularly true where the sole question relates to zoning authority under municipal and state laws. These issues clearly are not federal questions and are better left to the state courts to review." *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990).

Here, all of Romantix's federal claims are due to be dismissed, and there has

28

been no substantial progress as to Romantix's state-law claim. *Gregoire*, 236 F.3d at 419-420. Nor is this an exceptional case in which supplemental jurisdiction should be exercised. *McManemy*, 970 F.3d at 1041. Rather, the state court is better suited to resolve Romantix's state-law land use claim. *Condor Corp.*, 912 F.2d at 220.

## III. Romantix is not entitled to a preliminary injunction.

Romantix does not satisfy any, let alone all four, of the elements for a preliminary injunction, so its motion should be denied.

First, Romantix will not suffer irreparable harm in the absence of an injunction. *Dataphase Systems, Inc.*, 640 F.2d at 113. Romantix already operates two adult stores in Fargo. (Doc. 1, Complaint ¶¶ 40-43.) Unlike its proposed store— at which it has disavowed an intention to disseminate adult media—Romantix *does* disseminate speech at the two stores it currently operates. The status quo is that Romantix is disseminating *more* speech in the City of Fargo than it would be if it a preliminary injunction were granted.

Romantix cannot claim irreparable harm under the First Amendment when its desired outcome is to present less speech. Absent a First Amendment harm, any potential injury to Romantix is reparable by money damages. This, alone, is fatal to Romantix's quest for injunctive relief. *Dataphase Systems, Inc.*, 640 F.2d at 114 n.9.

Second, a preliminary injunction would injure the City more than the absence of an injunction would harm Romantix. *Id.* at 113. The City has made significant investments in terms of planning and money to revitalize Downtown Fargo. (*See* www.nytimes.com/2022/10/24/travel/fargo-upscales.html, accessed December 2, 2022). In that process, the City has determined that Adult uses do not belong in the

DMU. "[P]remature federal court intervention in [these] regulatory matters of strong local interest" would directly harm the City's policy goals. By contrast, Romantix can simply continue disseminating its sexually explicit speech elsewhere in the City, or it may choose to add its new store in a permissible location.

Third, Romantix fails to show a likelihood of success on the merits, as its complaint is subject to dismissal for all of the reasons stated herein.

Finally, "[t]he public interest is not served by premature federal court intervention in regulatory matters of strong local interest." *ILQ Inves., Inc. v. City of Rochester*, 25 F.3d 1413, 1419 (8th Cir. 1994); *see also Steakhouse, Inc. v. City of Raleigh, N.C.*, 166 F.3d 634, 642 (4th Cir. 1999) ("[G]ranting Steakhouse's request for a preliminary injunction would appear to contravene the general rule that land-use disputes affecting local communities must not lightly be removed from them.")

The Court should deny Romantix's motion for a preliminary injunction because none of the factors for granting injunctive relief are met.

## CONCLUSION

The First Amendment is the thread that runs through all of Romantix's claims, but Romantix has pleaded itself out of the First Amendment by disavowing any intention of disseminating adult media. This Court should dismiss Romantix's federal claims, decline to exercise supplemental jurisdiction over its state-law claim, and deny its preliminary injunction as moot. In the alternative, the Court should deny Romantix's motion for a preliminary injunction because it has not met any of the grounds for that extraordinary relief. Moreover, the requested injunction would not only disrupt the status quo, but also result in a net decrease in speech. In doing

so, it would thwart the City's important land-use policy goals.

Respectfully submitted,

Dated: December 2, 2022

/s/ *Scott D. Bergthold*
Scott D. Bergthold  TN BPR#023186
Law Office of Scott D. Bergthold, P.L.L.C.
2290 Ogletree Avenue, Suite 106
Chattanooga, TN 37421
(423) 899-3025
sbergthold@sdblawfirm.com

Howard D. Swanson  ND ID#04075
Swanson & Warcup, Ltd.
1397 Library Circle, Suite 202
Grand Forks, ND 58201
(701) 772-3407
hswanson@swlawltd.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on December 2, 2022, I filed the foregoing document with the United States District Court for the District of North Dakota via the Court's CM/ECF system, thereby serving all parties of record by operation of the CM/ECF system.

*s/ Scott D. Bergthold*
Scott D. Bergthold

31