IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| Romantix-Fargo, Inc.,<br><br>         Plaintiff,<br><br>  vs.<br><br>City of Fargo, North Dakota, and Nicole Crutchfield, in her official capacity as the Director of Planning and Development,<br><br>         Defendants. | **ORDER**<br><br>Case No. 3:22-cv-183 |

  Before the Court is Plaintiff Romantix-Fargo, Inc.'s ("Romantix") motion for a preliminary injunction. Doc. No. 10. On December 13, 2022, Romantix filed a motion for an emergency temporary restraining order ("TRO") and a motion to expedite, essentially seeking to expedite a decision on the preliminary injunction motion. Doc. No. 21; Doc. No. 23. Romantix seeks a preliminary injunction and temporary restraining order against Defendants City of Fargo and Nicole Crutchfield, in her official capacity as the Director of Planning and Development (the "City"). The City opposes the motions. Doc. No. 17; Doc. No. 26. For the reasons below, the motions are denied.

**I. BACKGROUND**

  This case involves a dispute over the location of Romantix's downtown Fargo location and certain zoning provisions in Fargo's Land Use Development Code (the "LUD Code").[1] Romantix is a "premier adult toy retailer"[2] that operates at 417 Northern Pacific Avenue in downtown Fargo.

---

[1] Fargo's Land Development Code is set forth in Chapter 20 of the Fargo Municipal Code. Doc. No. 1, ¶ 15.
[2] Romantix Fargo, https://www.romantix.com (last visited Dec. 20, 2022).

1

In June 2022, Romantix began taking steps (including entering into a lease agreement on June 10, 2022) to relocate to 74 North Broadway Drive, a different location in downtown Fargo. Doc. No. 1, ¶ 59. The 74 North Broadway location is zoned Downtown Mixed Use ("DMU") (id. ¶ 56) and is owned by Gill Investments, Ltd. ("Gill Investments"). Id. ¶ 30. Per the LUD Code, in a DMU zone, an "Adult Entertainment Center" use, which includes "an adult bookstore, adult cinema or adult entertainment facility" uses, are not allowed, unless expressly allowed by other provisions of the LUD Code. Fargo, N.D., Mun. Code § 20-0401. On the other hand, "Retail Sales and Service" use is permitted by right in a DMU zone. Id.

On or about August 15, 2022, Gill Investments submitted a change of use application to the City, seeking to change the classification of the property to allow "Retail Sales and Service" use. Doc. No. 1 ¶ 60. After much back and forth, the City (via Crutchfield) denied the change of use application, deciding (at least according to Romantix) the "Adult Bookstore" definition applied to its proposed use at the 74 North Broadway location. Doc. No. 1-14. And because that use is prohibited in a DMU zone, the City denied Romantix's proposed use at the 74 North Broadway location. Id. Romantix, for its part, disagrees with the City's decision and appealed the decision through the appropriate administrative channels in compliance with the LUD Code.

After unsuccessfully appealing[3] the change of use application decision, Romantix filed its complaint with this Court on October 26, 2022. Doc. No. 1. The complaint asserts five claims against the City—(1) a First Amendment challenge to "Adult Bookstore"; (2) a constitutional vagueness claim as to "Adult Bookstore" and "Adult Entertainment Center"; (3) a procedural due process claim as to the change of use application process; (4) a prior restraint/zone out claim as to

---

[3] The LUD Code provides broad appellate rights to "any person aggrieved . . . by any decision of the administrative officer." Fargo, N.D., Mun. Code § 20-0916.

2

the change of use application process; and, (5) an appeal from a decision of the Fargo City Commission under North Dakota Century Code section 28-34-01. Id.

Shortly after filing its case, Romantix filed a motion for preliminary injunction, specifically seeking "a preliminary injunction restraining the Defendant City of Fargo and its Planning Director from applying the definition of 'Adult Bookstore' or the change of use permit requirement to its proposed operation and from requiring it to obtain a change of use permit prior to opening and operating upon the premises[.]" Doc. No. 11. The City opposes the motion for preliminary injunction (Doc. No. 17) and filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[4] Id.

Then, on December 13, 2022 (and before filing its reply as to the preliminary injunction and response to the motion to dismiss), Romantix filed this emergency motion for a TRO, effectively seeking to expedite and convert its motion for a preliminary injunction into an emergency motion for a TRO. Doc. No. 21. According to Romantix, an expedited TRO is necessary because the City has taken steps to amend the LUD Code to add a "Sexual Device Shop" provision, which would effectively moot Romantix's motion for a preliminary injunction. Id. The Court held a status conference with counsel on December 19, 2022 (Doc. No. 27), and neither party requested a hearing on the motions. Each motion has been comprehensively briefed and presents largely legal questions.

## II.  DISCUSSION

To start, Federal Rules of Civil Procedure 65(a) and (b) authorize a district court to enter preliminary injunctions and TROs. Preliminary injunctions and TROs are "extraordinary

---

[4] The City requests the Court dismiss Romantix's federal claims pursuant to Rule 12(b)(6) and then decline to exercise supplemental jurisdiction over the remaining state-law claim. Doc. No. 17.

3

remed[ies] never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). When considering such remedies, the Court weighs the four factors set forth in Dataphase Systems, Inc., v. C L Systems, Inc., 640 F.2d 109 (8th Cir. 1981) (en banc). The Dataphase factors include: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Id. at 114. While no one factor is dispositive, likelihood of success on the merits is most important. Brady v. Nat'l Football League, 640 F.3d 785, 789 (8th Cir. 2011). The burden to demonstrate the necessity of a preliminary injunction and TRO rests with the movant. General Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 316 (8th Cir. 2009).

    **A.**    **Likelihood of Success on the Merits**

In evaluating likelihood of success on the merits, a district court should "flexibly weigh the case's particular circumstances to determine 'whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo.'" Calvin Klein Cosms. Corp. v. Lenox Lab'ys, Inc., 815 F.2d 500, 503 (8th Cir. 1987) (quoting Dataphase, 640 F.2d at 113). At this early stage, whether the movant will ultimately prevail is immaterial. PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1143 (8th Cir. 2007). Instead, the movant need only show a "fair chance of prevailing." Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008) (en banc).

    **1.**    **First Amendment**

Turning first to Romantix's First Amendment challenge to "Adult Bookstore," Romantix argues the definition is a content-based restriction on First Amendment activity and is presumptively unconstitutional. It further argues the definition is not supported by any compelling

government interest. As to First Amendment claims, the Eighth Circuit Court of Appeals recently explained:

> The First Amendment prohibits laws "abridging the freedom of speech." U.S. Const. amend. I. Its protection extends beyond verbal and written statements to expressive conduct that is "sufficiently imbued with elements of communication." Texas v. Johnson, 491 U.S. 397, 404, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989). Such conduct includes "nude dancing, burning the American flag, flying an upside-down American flag with a taped-on peace sign, wearing a military uniform, wearing a black armband, conducting a silent sit-in, refusing to salute the American flag, and flying a plain red flag." Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n, – U.S. –, 138 S. Ct. 1719, 1741-42 & n.1, 201 L. Ed. 2d 35 (2018) (Thomas, J., concurring in part and in the judgment) (collecting cases).
>
> Yet, not all conduct is "protected speech simply because the person engaging in [it] intends thereby to express an idea." Masterpiece Cakeshop, 138 S. Ct. at 1742. A court "must first determine whether [the plaintiff's action] constituted expressive conduct." Johnson, 491 U.S. at 403, 109 S. Ct. 2533. We ask "whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it." Id. at 404, 109 S. Ct. 2533. The party "desiring to engage in assertedly expressive conduct [must] demonstrate that the First Amendment even applies." Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 n.5, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984).

Adam & Eve Jonesboro, LLC v. Perrin, 933 F.3d 951, 957 (8th Cir. 2019).

While Romantix frames the definition of "Adult Bookstore" as a content-based restriction on First Amendment activity, there is a threshold question of whether the First Amendment even applies here. The term "Adult Bookstore," in isolation and on its face, could theoretically implicate expressive conduct, but focusing on the definition of "Adult Bookstore" is a misdirect. Rather, what matters is "whether [the plaintiff's action] constituted expressive conduct." Id. If Romantix was intending to sell books, magazines, movies, or other media that has been recognized as expressive conduct, that may implicate the First Amendment. But as repeatedly emphasized by Romantix, it "does not intend to maintain or offer for sale upon the property any books, magazines, or periodicals" or "DVDs, Arcades, or Theaters" or "services." Doc. No. 1 ¶¶ 34, 64.

5

The analysis then comes down to the question of whether selling sexual devices and other related adult novelties is speech. And on that question, Adam & Eve appears to control. Adam & Eve presents a fact pattern quite similar to the facts of this case. Adam & Eve Jonesboro, 933 F.3d 951. In analyzing the First Amendment claim in that case, the Eighth Circuit Court of Appeals noted that district courts "must first determine whether [the plaintiff's action] constituted expressive conduct." Id. at 957. It continued that the store cited "no authority that selling sexually-oriented devices is speech[,]" and that in expressly saying it would not sell DVDs, books, or magazines, the store had "jettisoned any claim to expressive conduct." Id. And given there was no expressive conduct, the First Amendment claim was dismissed. Id. at 958.

Here, because Romantix expressly alleges it will not sell books, magazines, periodicals, movies, or other media recognized as expressive conduct, and because the case law appears to suggest that selling sexually oriented devices is not speech, there appears to be a threshold issue of whether Romantix's conduct and actions constitute expressive conduct. Indeed, the weight of the case law suggests the conduct is likely not expressive conduct. So, given Adam & Eve, and the allegations at issue here, one cannot conclude that Romantix has demonstrated its First Amendment challenge to "Adult Bookstore" is likely to succeed on the merits. See Arcara v. Cloud Books, Inc., 478 U.S. 697, 705 (1986) ("First Amendment values may not be invoked by merely linking the words 'sex' and 'books.'").

### 2. Vagueness

Next, Romantix raises a vagueness claim under the Due Process Clause of the Fourteenth Amendment. Doc. No. 1 ¶¶ 95-116. More specifically, Romantix challenges the definitions of "Adult Bookstore" and "Adult Entertainment Center" as "vague and ambiguous, on its face and as

6

applied[.]" Doc. No. 1. The Eighth Circuit Court of Appeals also recently summarized the standard for a constitutional vagueness claim in Adam & Eve:

> A statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." F.C.C. v. Fox Television Stations, Inc., 567 U.S. 239, 253, 132 S. Ct. 2307, 183 L. Ed. 2d 234 (2012). Legislatures are not required to define every term in a statute. Phelps-Roper v. Koster, 713 F.3d 942, 952 (8th Cir. 2013). In the absence of a definition, words are given their ordinary meaning. Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 566, 132 S. Ct. 1997, 182 L. Ed. 2d 903 (2012); Schumacher v. Cargill Meat Sols. Corp., 515 F.3d 867, 871 (8th Cir. 2008). The Supreme Court has cautioned that "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." Holder v. Humanitarian Law Project, 561 U.S. 1, 18–19, 130 S. Ct. 2705, 177 L. Ed. 2d 355 (2010).

Adam & Eve Jonesboro, 933 F.3d at 958. Additionally:

> Although there may be issues of interpretation regarding the meaning of a statute, that in itself does not give rise to a finding of unconstitutional vagueness. Moreover, "It will always be true that the fertile legal 'imagination can conjure up hypothetical cases in which the meaning of [disputed] terms will be in nice question.'" Id. at 110 n. 15, 92 S. Ct. 2294 (quoting American Communications Ass'n v. Douds, 339 U.S. 382, 412, 70 S. Ct. 674, 94 L. Ed. 925 (1950)) (alteration in original).

Farkas v. Miller, 151 F.3d 900, 905-06 (8th Cir. 1998).

Without question, this case presents an active dispute between Romantix and the City over the interpretation and application of the definitions of "Adult Bookstore" and "Adult Entertainment Center" under the LUD Code. But Romantix's issues with the City's interpretation and potential (mis)application of the definitions to its business do not equate to a constitutional vagueness claim, at least for the purposes of deciding the motions for a preliminary injunction and TRO. See Farkas, 151 F.3d at 905-06 ("issues of interpretation regarding the meaning of a statute . . . does not give rise to a finding of unconstitutional vagueness.")  A plain reading of the definitions of "Adult Bookstore" and "Adult Entertainment Center" appears to provide "a person

7

of ordinary intelligence fair notice of what is prohibited."[5] The same is true of the term "stock in trade," which is commonly understood to mean merchandise or materials. Stock-in-Trade, Merriam-Webster, https://www.merriam-webster.com/dictionary/stock-in-trade (last visited Dec. 21, 2022). At bottom, Romantix's dispute with the City centers on a disagreement as to interpretation and application, and given the case law as to vagueness, that is simply not enough to demonstrate a likelihood of success on the merits of a constitutional vagueness claim.

### 3. Procedural Due Process

Romantix also raises a procedural due process claim under the Fourteenth Amendment. Doc. No. 1 ¶¶ 133-149. The procedural due process clause of the United States Constitution provides:

> No state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To prove a due process violation in a local land use decision the plaintiff must identify a protected property interest to which the Fourteenth Amendment's due process protection applies, and then demonstrate that the government action complained of is truly irrational, that is something more than . . . arbitrary, capricious, or in violation of state law." Snaza v. City of St. Paul, Minn., 548 F.3d 1178, 1182 (8th Cir. 2008) (citations and internal quotation marks omitted). "A protected property interest is a matter of state law involving a legitimate claim to entitlement as opposed to a mere subjective expectancy." Id. at 1182–83 (citation and internal quotation marks omitted).

Solum v. Bd. of Cnty. Comm'rs for Cnty. of Houston, 880 F. Supp. 2d 1008, 1012 (D. Minn. 2012). "In the zoning context, assuming a landowner has a protectible property interest, procedural due process is afforded when the landowner has notice of the proposed government action and an opportunity to be heard." Pietsch v. Ward Cnty., 991 F.3d 907, 910 (8th Cir.), cert. denied sub

---

[5] Adult Book Store is defined as "An enclosed building having as a substantial or significant portion of its stock in trade, books, magazines, or other periodicals that are distinguished or characterized by their emphasis on matter depicting or describing specified sexual activities or specified anatomical areas." Fargo, N.D., Mun. Code § 20-1202(2). Adult Entertainment Center is defined as "An Adult Bookstore, Adult Cinema, Adult Entertainment Facility or any combination thereof." Fargo, N.D., Mun. Code § 20-1202(5).

nom. Pietsch v. Ward Cnty., N. Dakota, 211 L. Ed. 2d 351, 142 S. Ct. 563 (2021) (first quoting Anderson v. Douglas Cty., 4 F.3d 574, 578 (8th Cir. 1993); and then citing Bituminous Materials, Inc. v. Rice Cty., 126 F.3d 1068, 1070 (8th Cir. 1997)).

Here, Romantix argues the City's change of use application process is *ad hoc*, not defined in the LUD Code, and fails to provide sufficient process. The Court disagrees. In fact, it is quite clear from the record, even as alleged by Romantix, that there was much back and forth between Romantix and the City, including several meetings and discussions, before the City made a decision on the change of use application. Ultimately, the City reached a decision that Romantix disagreed with, and Romantix properly appealed under the LUD Code. On these facts, it strains credibility to suggest that the City's process was "irrational" and that Romantix was not provided notice and an opportunity to be heard. To the contrary, the record demonstrates an extensive administrative proceeding as to the change of use application. Accordingly, Romantix has not demonstrated a likelihood of success on its procedural due process claim.

    **4. Prior Restraint / Zone Out**

For its final federal claim, Romantix alleges a prior restraint/zone out claim against the City, arguing the "change of use application process is an unconstitutional prior restraint and zone out in violation of the First and Fourteenth Amendments." Doc. No. 1. "The term prior restraint is used 'to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.'" Alexander v. United States, 509 U.S. 544, 550 (1993) (quoting M. Nimmer, Nimmer on Freedom of Speech § 4.03, p. 4-14 (1984) (emphasis added)). However, "[t]he law must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the

identified censorship risks." City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 759 (1988). Indeed:

> laws of general application that are not aimed at conduct commonly associated with expression and do not permit licensing determinations to be made on the basis of ongoing expression or the words about to be spoken, carry with them little danger of censorship. For example, a law requiring building permits is rarely effective as a means of censorship. To be sure, on rare occasion an opportunity for censorship will exist, such as when an unpopular newspaper seeks to build a new plant. But such laws provide too blunt a censorship instrument to warrant judicial intervention prior to an allegation of actual misuse.

Id. at 760-61.

As with its other claims, Romantix has not demonstrated a likelihood of success on the merits of its prior restraint claim. The City's change of use application process does not forbid "certain communications" and does not have an "close enough nexus to expression" "to pose a real and substantial threat" of censorship. Critically, Romantix's business is not censored at all or forbidden; rather, the change of use application process is an aspect of the City's zoning scheme for deciding where certain businesses may operate. Again, disagreement over the interpretation and application of zoning ordinance is certainly an issue in this case, but Romantix has not demonstrated likelihood of success on the merits of the prior restraint claim when the change of use application process does not forbid certain communications and does not have a close enough nexus to expression.

### 5. State Law Appeal

With the federal claims addressed, what remains is Romantix's state law appeal under North Dakota Century Code section 28-34-01. And that appeal may be well suited for state court, because (at least in this Court's view) the heart of the dispute between Romantix and the City is the application (or misapplication) and interpretation of "Adult Bookstore" under the LUD Code. But for the purposes of issuing a TRO under this Court's federal jurisdiction, recall that the City

has moved to dismiss all federal claims, including the First Amendment challenge, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). That motion appears to raise many sound arguments questioning the plausibility of Romantix's federal claims. And if the federal claims are ultimately dismissed, the law as to federal jurisdiction would counsel against this Court retaining supplemental jurisdiction over the purely state law claim. Moreover, the request for injunctive relief hinges far more on the alleged federal constitutional violations, as opposed to the state law appeal. Accordingly, when viewed in the larger procedural and jurisdictional context, the state law appeal is similarly unlikely to success on the merits in federal court.

Put simply, Romantix has not demonstrated that it is likely to succeed on the merits of its claims, and as a result, that factor weighs against granting Romantix a preliminary injunction and a TRO.

### B.     Remaining Factors

When weighing the Dataphase factors in cases involving First Amendment challenges, "the likelihood of success on the merits is often the determining factor in whether [an injunction] should be issued." Phelps-Roper v. Nixon, 509 F.3d 480, 485 (8th Cir. 2007), modified on reh'g, 545 F.3d 685 (8th Cir. 2008). Given that Romantix has not demonstrated likelihood of success on the merits of its claims, the remaining Dataphase factors—irreparable injury, public interest, and the balance of equities—also weigh against granting a preliminary injunction and a TRO.

As to irreparable injury, the movant must show a significant risk of harm; the absence of such a showing is fatal to a request for injunctive relief. MKB Mgmt. Corp. v. Burdick, 954 F. Supp. 2d 900, 912 (D.N.D. 2013). Stated another way, the movant must demonstrate that the injury is of such imminence that a clear and present need for equitable relief exists. Packard Elevator v. Interstate Com. Comm'n, 782 F.2d 112, 115 (8th Cir. 1986). Typically, constitutional

violations do constitute per se harm. See Pavek v. Simon, 467 F. Supp. 3d 718, 754 (D. Minn. 2020) ("The denial of a constitutional right is a cognizable injury . . . and an irreparable harm." (quoting Portz v. St. Cloud Univ., 196 F. Supp. 3d 963, 973 (D. Minn. 2016)); Johnson v. Minneapolis Park & Recreation Bd., 729 F.3d 1094, 1101-02 (8th Cir. 2013) (explaining that it is well-established in the Eighth Circuit that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury").

As discussed above, Romantix has not demonstrated likelihood of success as to its constitutional claims, so there is no per se irreparable harm present on these facts. No doubt, there is an active dispute over the interpretation and application (or misapplication) of the LUD Code, but a disagreement over interpretation and application does not suggest "a clear and present need for equitable relief." Also, as a practical matter, contrary to Romantix's characterization of its harm, the LUD Code does not prohibit its business from operating—it restricts where the business may operate. And that distinction is crucial in assessing irreparable harm (or lack thereof) in this case. Also unconvincing is Romantix's most recent argument that the City taking steps to amend the LUD Code to add a "Sexual Device Shop" provision will cause it irreparable harm. Should the City proceed with the amendment (as it has every right to do), Romantix's position and the status quo would remain the same as it is today. Moreover, any alleged economic loss can be remedied by money damages, making injunctive relief inappropriate. All told, Romantix has not demonstrated a significant risk of harm, and the lack of irreparable injury weighs against granting a preliminary injunction and a TRO.

Moving to public interest, "the determination of where the public interest lies also is dependent on the determination of the likelihood of success on the merits of the First Amendment challenge because it is always in the public interest to protect constitutional rights." Phelps-Roper,

12

509 F.3d at 485. Similar to irreparable harm, this factor is tied to the likelihood of success as to the constitutional claims. And given that there appears to be no likely constitutional violation, the public interest factor also counsels against granting a preliminary injunction and a TRO on these facts.

Finally, the balance of the equities does not "so favor" Romantix that justice requires immediate intervention to preserve the status quo. Quite the opposite—granting Romantix a TRO and preliminary injunction now would disrupt the status quo by having this federal Court single-handedly overrule and interfere with a zoning decision by a local government. Once again, the balance of the equities factor also weighs against granting such extraordinary relief.

### III.  CONCLUSION

Ultimately, the substantive dispute over the City's denial of the change of use application does not appear to present a First Amendment or other constitutional violation, nor does it justify issuing a preliminary injunction and a TRO. Preliminary injunctions and temporary restraining orders are extraordinary relief (<u>Winter</u>, 555 U.S. at 24), and given the balance of the <u>Dataphase</u> factors, such extraordinary relief is not warranted here. For the reasons above, Romantix's motion for a preliminary injunction (Doc. No. 10), motion for temporary restraining order (Doc. No. 21), and motion to expedite (Doc. No. 23) are **DENIED**. As discussed by the parties at the December 19, 2022, status conference, Romantix may have an additional two weeks to respond to the City's motion to dismiss, making its response due January 6, 2023.

**IT IS SO ORDERED**.

Dated this 22nd day of December, 2022.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court